1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    UNITED STATES OF AMERICA,              No. 1:17-cv-00187-DAD-EPG

12                Plaintiff,

13         v.                                ORDER GRANTING GOVERNMENT'S
                                             MOTION FOR SUMMARY JUDGMENT
14    MELBA L. FORD,                         AND DENYING DEFENDANT'S
                                             REMAINING MOTIONS AS MOOT
15                Defendant.
                                             (Doc. Nos. 35, 54, 55, 57)
16

17

18         This matter came before the court on March 20, 2018 for hearing on plaintiff United

19   States of America's ("plaintiff" or "the United States") motion for summary judgment. (Doc. No.

20   35.) Attorney Jonathan Hauck of the U.S. Department of Justice Tax Division appeared on behalf

21   of the United States, and defendant Melba Ford appeared at the hearing representing herself *pro*

22   *se*. Following oral argument, plaintiff's motion was taken under submission. Having considered

23   the parties' briefs and oral arguments, and for the reasons stated below, the court will grant

24   plaintiff's motion for summary judgment and deny defendant's remaining motions as moot. The

25   court will enter judgment against defendant Ford for $190,854.91, which represents her 2003

26   federal income tax liability, including interest and penalties assessed pursuant to 26 U.S.C. §

27   6702 for the years of 1993, 2001, 2002, 2003, and 2005.

28   /////

**BACKGROUND**

The United States filed this action to reduce a federal tax assessment for the income tax year of 2003 to judgment against defendant. Defendant Ford, despite being born and raised in the United States, does not believe herself to be a federal citizen of the United States and believes that the Bill of Rights guarantees her the right to earn a living without taxation.[1] (*See* Doc. No. 35-1 at 2.) Apparently based upon this belief, defendant has not filed a tax return with the Internal Revenue Service ("IRS") for at least nineteen years prior to 2009. (*Id.*)

The facts underlying this case are largely undisputed.[2] In 2009, defendant submitted a signed Form 1040, the U.S. individual income tax return, to the IRS for her 1993 income tax year. (*See* Doc. No. 35-2 at ¶¶ 9–10.) Additionally, defendant submitted a corrected Form 1099, which documents miscellaneous income, stating that she had not earned any federal income. (*Id.* at ¶¶ 11–13.) Defendant's Form 1040 for 1993 was deemed to contain at least one frivolous position pursuant to 26 U.S.C. § 6702(c). (*See id.* at ¶ 14.) As a result, the IRS assessed a $5,000 frivolous filing penalty against defendant pursuant to 26 U.S.C. § 6702(a). (*Id.*) The IRS

/////

---

[1] In a deposition given on August 9, 2017, defendant testified as to her belief that her income was not taxable because it did not constitute federal income. (*See* Doc. No. 35-3 at 27–28) ("I have a right, by the Constitution of this country to make a living. Everyone has a right. The Bill of Rights guarantees us a living. Without taxation.") Defendant also testified to her belief that she is a sovereign citizen and thus not subject to federal law. (*See id.* at 29) ("I'm not a United States citizen. I was born and raised here in this country, but that does not make me a United States, meaning federal citizen. I am not a federal citizen.").

[2] In her opposition to the pending motion, an unauthorized "addendum" to that opposition, and in her "motion to clarify facts precluding summary judgment," defendant Ford maintains that there are material issues of fact precluding the granting of plaintiff's summary judgment motion. (*See* Doc. Nos. 44, 47, 54.) However, these are largely arguments about what defendant believes is or is not permitted under the law, rather than arguments identifying factual disputes about what did or did not happen in this case. (*See, e.g.*, Doc. No. 44 at 3) (stating a "triable issue of fact arises over whether IRS has authority under 6020(b) to create such documents"). Thus, defendant's actual arguments do not support her contention that disputed issues of material fact which she has established preclude the granting of summary judgment. Rather, the crux of defendant's argument, as the court confirmed with defendant Ford at the hearing in this matter, is that the Commissioner of the IRS has disclaimed the IRS's authority under 26 U.S.C. § 6020(b) to create tax returns for taxpayers who fail to file returns. (*See* Doc. No. 52 at 12.) As discussed in this order, the court rejects this argument as finding no support in the law.

prepared a Form 8278 to demonstrate written supervisory approval of the frivolous filing penalty assessed against defendant with respect to her Form 1040 for the 1993 tax year. (*Id.* at ¶ 15.)

In 2010, defendant submitted a signed Form 1040 to the IRS for her 2001 income tax year. (Doc. No. 35-2 at ¶¶ 16–17.) In 2014, she again provided a copy of the 2001 Form 1040 to the IRS. (*Id.*) Defendant also submitted a corrected Form 1099 regarding her income from Hakkoh Development ("Hakkoh") and a disclosure statement. (*Id.* at ¶¶ 17–18.) Defendant's Form 1040 for 2001 was also deemed to be frivolous by the IRS, and the IRS prepared a Form 8278 to demonstrate written supervisory approval. (*Id.* at ¶¶ 20–21.)

In 2010, defendant submitted a signed Form 1040 to the IRS for her 2002 income tax year. (*Id.* at ¶¶ 22–23.) Defendant also submitted a corrected Form 1099 regarding her income from Hakkoh. (*Id.* at ¶ 24.) Defendant's Form 1040 for 2002 was also deemed to be frivolous by the IRS, and the IRS prepared a Form 8278 to demonstrate written supervisory approval. (*Id.* at ¶¶ 25–26.)

In 2010, defendant submitted a signed form 1040 to the IRS for her 2003 income tax year. (*Id.* at ¶¶ 27–28.) Defendant also submitted a corrected 1099 regarding her income from Hakkoh. (*Id.* at ¶ 29.) Defendant's Form 1040 for 2003 was also deemed to be frivolous by the IRS, and the IRS prepared a Form 8278 to demonstrate written supervisory approval. (*Id.* at ¶¶ 30–31.)

In 2010, defendant submitted a signed Form 1040 to the IRS for her 2005 income tax year. (*Id.* at ¶¶ 32–33.) Defendant also submitted a corrected Form 1099. (*Id.* at ¶ 34.) Defendant's Form 1040 for 2005 was also deemed to be frivolous by the IRS, and the IRS prepared a Form 8278 to demonstrate written supervisory approval. (*Id.* at ¶¶ 35–36.)

The IRS received information return processing ("IRP") information from several parties indicating that defendant in fact had taxable income during the 2003 tax year. (*Id.* at ¶ 37.) IRP information is maintained by the IRS and reflects data reported by third parties on various IRS forms. (*Id.* at ¶ 38.) The IRS can obtain IRP transcripts for individuals by running searches for an individual's social security number. (*Id.*) Because defendant had not timely filed a Form 1040, in 2006 the IRS computed her federal income tax liability for the 2003 tax year using IRP information. (*Id.* at ¶ 43.)

In July 2006, the IRS sent defendant a Letter 2566, stating that the IRS had not received her Form 1040 for 2003, the IRS's calculation of her taxes owed based on IRP information, and a request that she respond to the letter within thirty days. (*Id.* at ¶ 44.) The IRS did not receive a response from defendant to the Letter 2566. (*Id.* at ¶ 45.) On September 11, 2006, the IRS sent defendant a statutory notice of deficiency by certified mail, to which she also did not respond. (*Id.* at ¶ 46.) Further, IRS records do not reflect that defendant filed a petition with the United States Tax Court within ninety days of the letter being sent. (*Id.* at ¶ 47.) As a result, the IRS made an assessment of defendant's tax liability for 2003 of $58,485.00 based on the amount reflected in the deficiency letter. (*Id.*) The following assessments against defendant were made by an authorized delegate of the Secretary of the Treasury, representing individual federal income taxes, penalties, interest, and other statutory additions for each of the tax years below. (*Id.* at ¶ 48.)

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

| Type of Tax | Tax Period | Assessment Date | Assessment Amount[3] | Total Balance as of February 22, 2018 (including accruals) |
|---|---|---|---|---|
| Income (Forms 1040) | 2003 | 02/26/2007<br>10/06/2008<br>10/19/2015<br>08/15/2016<br>10/17/2016 | T $ 59,485.00<br>P1 $ 1,534.88<br>P2 $ 13,384.12<br>I $ 14,421.49<br>P3 $ 10,409.87<br>P3 $ 4,461.38<br>I $44,092.09<br>F $ 62.00<br>I $ 5,312.86 | $159,625.66 |
| 26 U.S.C. § 6702 - Civil Penalty | 1993 | 06/06/2011<br>10/19/2015<br>10/17/2016 | P $ 5,000.00<br>I $ 718.51<br>I $ 205.55 | $6,252.76 |
| 26 U.S.C. § 6702 - Civil Penalty | 2001 | 05/30/2011<br>05/19/2014<br>10/19/2015<br>10/17/2016 | P $ 5,000.00<br>F $ 20.00<br>I $ 723.75<br>I $ 206.46 | $6,280.37 |
| 26 U.S.C. § 6702 - Civil Penalty | 2002 | 08/01/2011<br>10/19/2015<br>10/17/2016 | P $ 5,000.00<br>I $ 683.52<br>I $ 204.30 | $6,214.52 |
| 26 U.S.C. § 6702 - Civil Penalty | 2003 | 05/30/2011<br>10/19/2015<br>10/17/2016 | P $ 5,000.00<br>I $ 722.88<br>I $ 205.71 | $6,257.55 |
| 26 U.S.C. § 6702 - Civil Penalty | 2005 | 07/18/2011<br>10/19/2015<br>10/17/2016 | P $ 5,000.00<br>I $ 692.24<br>I $ 204.62 | $6,224.05 |
| | | | | $ 190,854.91 |

---

[3] T—tax; P1—estimated tax penalty, 26 U.S.C. § 6654; P2—late filing penalty, 26 U.S.C. § 6651(a)(1); P3—failure to pay tax penalty, 26 U.S.C. § 6651(a)(2); I—interest; F—fees and collection costs.

Plaintiff filed a motion for summary judgment in this action on February 16, 2018, seeking to reduce its tax assessments to judgment for defendant's 2003 income tax liability, which totals $159,625.66 as of February 22, 2018, and for frivolous tax return penalties pursuant to 26 U.S.C. § 6702(a) for defendant's Form 1040 for tax years 1993, 2001, 2002, 2003, and 2005, which total $31,229.25 as of February 22, 2018. (Doc. No. 35 at 2.) The total judgment requested by plaintiff against defendant Ford is $190,854.91. (*Id.*) Defendant filed a motion to recuse the undersigned and to stay determination of the summary judgment motion on February 20, 2018. (Doc. No. 36.) On March 2, 2018, the court denied defendant's motions. (Doc. No. 42.) Defendant filed an opposition to the motion for summary judgment on March 5, 2018. (Doc. No. 44.) Plaintiff filed a reply on March 13, 2018. (Doc. No. 46.)

On March 14, 2018, defendant filed an 83–page addendum to her opposition to the motion for summary judgment without seeking the leave of the court. (Doc. No. 47.) On March 27, 2018, defendant filed a submission styled as a "motion to clarify facts precluding summary judgment." (Doc. Nos 53, 54.) Additionally, on April 25, 2018, defendant filed a renewed motion to dismiss and a motion to sanction plaintiff's counsel. (Doc. No. 55.) On May 15, 2018, defendant filed a motion to judicially notice the filing of a petition for writ of mandamus filed with the Supreme Court. (Doc. No. 57.)[4]

## LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

/////

---

[4] On May 22, 2018, defendant filed still more motions: a renewed motion to clarify facts precluding summary judgment (Doc. No. 59) and a renewed motion to dismiss and sanction plaintiff's counsel (Doc. No. 60), both of which were noticed for hearing on June 5, 2018. Both of these motions were stricken by the court because the filings did not comply with Local Rule 230, which provides that a motion is to be heard not less than twenty-eight days after service and filing of the motion. (Doc. No. 66.) Defendant did not refile these motions in a manner that complied with Local Rule 230. The government filed oppositions to these motions on May 30, 2018, and defendant filed replies on June 6 and June 12, 2018, notwithstanding the fact that the motions had been stricken. (Doc. Nos. 64, 65, 68, 69.)

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment.").  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . .. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

## DISCUSSION

"The district courts of the United States . . . shall have such jurisdiction . . . to render . . . judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). As explained below, the Ninth Circuit has adopted a burden-shifting framework for reducing tax liabilities involving unreported income to judgment. The government bears the initial burden of proof in an action to collect federal taxes. *In re Olshan*, 356 F.3d 1078, 1084 (9th Cir.2004) (*quoting Palmer v. I.R.S.*, 116 F.3d 1309, 1312 (9th Cir.1997)). "The government can usually carry its initial burden, however, merely by introducing its assessment of tax due. Normally, a presumption of correctness attaches to the assessment, and its introduction establishes a prima facie case." *United States v. Stonehill*, 702 F.2d 1288, 1293 (9th Cir. 1983) (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933) and *United States v. Molitor*, 337 F.2d 917, 922 (9th Cir. 1964)); *see also Huff v. United States*, 10 F.3d 1440, 1445 (9th Cir. 1993) ("IRS Form 4340 provides at least presumptive evidence that a tax has been validly assessed."); *United States v. Vacante*, 717 F. Supp. 2d 992, 1004 (E.D. Cal. 2010) (Form 4340s are highly probative and can establish that "tax assessment was properly made and notice and demand for payment were sent."). The assessment of tax liability is presumed to be correct if it is supported by a minimal evidentiary foundation linking the taxpayer with income-producing

activity.  *See Edwards v. Commissioner,* 680 F.2d 1268, 1270 (9th Cir. 1982)*; Weimerskirch v. Comm'r*, 596 F.2d 358, 361 (9th Cir. 1979); *United States v. Cowan*, 535 F. Supp. 2d 1135, 1143 (D. Hawaii 2008).

"Once the Government has carried its initial burden of introducing some evidence linking the taxpayer with income-producing activity, the burden shifts to the taxpayer to rebut the presumption by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous." *Rapp v. Comm'r*, 774 F.2d 932, 935 (9th Cir. 1985) (citing *Adamson v. Commissioner*, 745 F.2d 541, 547 (9th Cir. 1984) and *Delaney v. Commissioner*, 743 F.2d 670, 671 (9th Cir.1984)); *see also Hardy v. C.I.R.*, 181 F.3d 1002, 1004–05 (9th Cir. 1999).  Finally, if a taxpayer is successful in overcoming the presumption that the initial determination of tax liability is correct, the burden of proving the deficiency then falls again to the government. *Hardy v. C.I.R.*, 181 F.3d at 1005; *Stonehill*, 702 F.2d at 1293; *Keogh v. C.I.R.*, 713 F.2d 496, 501 (9th Cir. 1983); *Weimerskirch*, 596 F.2d at 360.

A.      **Defendant Ford's 2003 Income Tax Liability**

Here, the United States has submitted an IRS Certificate of Assessments and Payments ("Forms 4340") calculating the amount of tax due from defendant Ford for the 2003 tax year (Doc. No. 35-8), which provides "presumptive evidence that a tax has been validly assessed . . .." *Huff*, 10 F.3d at 1445; *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992) (finding that the Government's submission of a Form 4340 was sufficient to establish that a valid assessment had been made, in light of no contrary evidence from defendants); *Cowan*, 535 F. Supp. 2d at 1144 ("The Certificates of Assessments and Payments, Forms 4340, are, in the absence of contrary evidence, sufficient to establish that the tax assessments were correctly made, and that notices and demand for payment were sent."); *United States v. Wright*, Civ. No. 2:94-1183 EJG GGH, 1994 WL 715870, at *7-8 (E.D. Cal. Oct. 25, 1994) (finding that a Form 4340 satisfied the government's burden at summary judgment of the defendant's tax liability amount).

Further, the United States has presented other IRS forms and deposition testimony to corroborate the Form 4340 and to create an evidentiary foundation, thereby establishing a *prima facie* case.  *See Stonehill*, 702 F.2d at 1293 ("The factual foundation for the assessment is laid

'once some substantive evidence is introduced demonstrating that the taxpayer received unreported income.'"); *Weimerskirch*, 596 F.2d at 362 (holding that the Tax Court "erred in finding that the presumption of correctness attached to the deficiency determination" because it was not supported by any "evidentiary foundation linking the taxpayer to the alleged income-producing activity").

In this case, the United States has presented evidence on summary judgment linking defendant Ford with income-producing behavior by submitting a Letter 2566 dated July 24, 2006. (*See* Doc. No. 35-7 at 7.) The letter notified defendant that the IRS had not received her income tax return for the 2003 tax year.[5] (*Id.*) Further, both the Form 4340 and the Letter 2566 are corroborated by testimony given by defendant at her deposition, in which she admitted to engaging in a variety of income-producing activities. (*See* Doc. No. 35-3.) For instance, at her August 9, 2017 deposition, defendant testified that she had worked as a real estate broker in 2003 for Hakkoh (*id.* at 7, 24), invested money with National Commodities Corporation (*id.* at 22), received rent payments from the United States Department of Housing and Urban Development (*id.* at 18), and received rent payments from rental properties (*id.* at 16–17).

Having presented this evidence on summary judgment, the United States has met its initial burden, and "the burden shifts to the taxpayer to rebut the presumption by establishing by a preponderance of the evidence that the deficiency determination is arbitrary or erroneous." *See Rapp*, 774 F.2d at 935. Though defendant filed an opposition to the pending motion for summary judgment, she has failed to present any evidence that the government's tax deficiency determination at issue is arbitrary or erroneous. Instead, defendant merely asserts that there are fourteen "triable issues of material fact, or mixed questions of fact and law. . . in contention between the parties, preventing summary judgment." (Doc. No. 44 at 1.) In summary, the court construes defendant's assertions as advancing the following three arguments: 1) whether 26 U.S.C. § 6020 applies to income tax; 2) whether the IRS's Automated Substitute for Return

---

[5] The tax calculation in the Letter 2566 (*id.* at 9–12) is consistent with the IRP transcript for 2003. (Doc. No. 35-1 at 5.) The IRP transcript uses data reported by third parties to compute income tax liability for individuals who do not file individual income tax returns. (*Id.*)

("ASFR") process is legal; and 3) whether the Forms 4340 or other IRS documents or testimony were falsified in relation to this action. None of these arguments satisfy defendant's burden of rebutting the presumption of correctness attached to plaintiff's determination of her tax liability. Nonetheless, the court will briefly discuss each of defendant Ford's arguments below.

First, defendant asserts that based on prior statements by the IRS, 26 U.S.C. § 6020, which authorizes the IRS to prepare returns for taxpayers who do not file a tax return, does not apply to the income tax. (Doc. Nos. 44 at 3–4; 54.)[6] Defendant points to four different statements attributable to the IRS Commissioner in support of this contention: (1) the Internal Revenue Manual § 5.1.11.6.7; (2) the Privacy Impact Assessment; (3) the Revenue Officer's Training Manual; and (4) a memorandum dated July 29, 1998 authored by an assistant chief counsel of the IRS. (Doc. No. 44 at 3–4.)

Defendant's argument is unpersuasive for various reasons. First, defendant has made no showing that any of the cited documents have the force and effect of law. *See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (explaining that deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) is required where Congress has delegated the agency the authority to speak with the force of law on a matter, and that "the overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication"). Indeed, courts have specifically held that the Internal Revenue Manual does not have the force and effect of law and imbues no rights on taxpayers. *See Kimdun Inc. v. United States*, 202 F. Supp. 3d 1136, 1147 (C.D. Cal. 2016) (citing *Fargo v. Commissioner*, 447 F.3d 706, 713 (9th Cir. 2006)); *see also Fargo v. C.I.R.,* 447 F.3d 706, 713 (9th Cir. 2006) ("The Internal Revenue Manual does not have the force of law and does not confer rights on taxpayers. This view is shared among many of our sister circuits."); *Dickow v. United States*, 654 F.3d 144, 153 n. 8 (1st Cir. 2011); *Marks v. C.I.R.*, 947 F.2d 983, 986 n. 1. (D.C. Cir. 1991).

---

[6] Following the hearing on the pending motion for summary judgment, defendant filed additional motions advancing similar arguments to those included in her opposition to plaintiff's motion for summary judgment. On March 27, 2018, defendant also filed a "motion to clarify facts precluding summary judgment." (Doc. No. 54.)

Additionally, defendant has inaccurately summarized the documents upon which she relies and then draws erroneous conclusions therefrom. As an example, the July 29, 1998 memorandum authored by the IRS's assistant chief counsel does not opine about the validity of applying 28 U.S.C. § 6020 to income tax, as argued by defendant. Instead, the memorandum analyzes steps to take when Forms 1040 are returned by taxpayers with additions indicating that the taxpayer protest the payment of taxes. (*See* Doc. No. 44 at 30–33.) Specifically, the memorandum states that if "a taxpayer's addition [to the Form 1040] denies tax liability (and, therefore, negates an otherwise effective penalties of perjury statement), the form is not a valid return, and penalties, such as the failure to file penalty, and interest would apply." (*Id.* at 33.) Though tangentially relevant to this case in that it discusses filings by taxpayers protesting the payment of taxes, this memorandum does not establish that the United States' deficiency determination of defendant's tax liability is arbitrary or erroneous. Further, it does not establish that 26 U.S.C. § 6020 does not apply to the income tax.

Defendant's contention about the lack of statutory authority allowing the IRS to create substituted returns in the event that a taxpayer does not file a tax return is also unpersuasive and without support. The relevant statute notes exactly to the contrary, and specifically authorizes the creation of a return absent any filing from the taxpayer:

> If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor . . . the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.

26 U.S.C. § 6020(b). Moreover, a tax liability is owed regardless of whether plaintiff filed a tax return. *See* 26 C.F.R. § 301.6211-1(a) ("If no return is made . . . [the taxes paid] shall be considered as zero. Accordingly, in any such case, . . . the deficiency is the amount of the income tax imposed by subtitle A."). Finally, courts have repeatedly recognized the authority of the IRS to prepare substitute income tax returns for taxpayers who do not file a Form 1040. *See, e.g.*, *Roat v. Comm'r*, 847 F.2d 1379, 1381 (9th Cir. 1988) (recognizing that "section 6020(b)(1) simply endows the Secretary with '[a]uthority' to execute a return" on behalf of a taxpayer who does not file one himself); *Rapp v. Commissioner*, 774 F.2d 932, 935 (9th Cir.1985); *In re Smith*,

527 B.R. 14, 18 (N.D. Cal. 2014), *aff'd*, 828 F.3d 1094 (9th Cir. 2016) ("Section 6020(b) refers to a return prepared by the IRS when the taxpayer fails to prepare a timely return or makes a false or fraudulent return, and the IRS must prepare the return based upon such information as it obtains itself."); *In re Ashe*, 228 B.R. 457, 460 (C.D. Cal. 1998) ("When a party fails to file a return, or willfully files a false or fraudulent return, the IRS shall prepare the return from its own information.").

Next, defendant questions whether the determination of her income tax liability through the ASFR program is legal. (Doc. No. 44 at 5–11.) Using the ASFR program, the IRS assesses tax liabilities by securing valid voluntary delinquent tax returns and computing tax, interest, and penalties based on income information submitted by payers when no return is filed. *See* I.R.M. § 5.18.1. Any issue defendant has regarding the legality of the ASFR program is one that challenges 26 U.S.C. § 6020(b), which is the statute authorizing the ASFR program. These challenges are baseless and do not preclude the granting of plaintiff's motion for summary judgment. *See Rivas v. Comm'r of Internal Revenue*, 113 T.C.M. (CCH) 1268 (T.C. 2017), *appeal dismissed* (Mar. 30, 2018) (notice of deficiency determining the liability in a substitute for return generated by the ASFR computer system was valid); *Bilyeu v. C.I.R.*, 103 T.C.M. (CCH) 1859 (T.C. 2012) (upholding tax assessments based upon the ASFR program and finding that petitioner's uncorroborated testimony fails to meet the taxpayer's burden to refute the assessment).

Finally, defendant alleges that the government has falsified digital and paper records throughout the course of this civil action. (Doc. No. 44 at 5–11.) Defendant's conclusory allegations in this regard are wholly unsupported by specific facts or any evidence and are therefore insufficient to create a triable issue of fact precluding summary judgment. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data.").

Defendant has been unable to rebut the presumption of correctness of the Forms 4340 by establishing, by a preponderance of the evidence, that the deficiency assessment is arbitrary or erroneous. Therefore, the court must enter judgment in favor of the United States as to

1  defendant's 2003 income tax liability.  Defendant is consequently also liable for interest and

2  penalties accruing on tax liabilities.  *See* 26 U.S.C. §§ 6601(a), 6621, 6622(a), 5554; 28 U.S.C. §

3  1961(c); *Purer v. United States*, 872 F.2d 277, 277 (9th Cir. 1989) ("[A]fter December 31, 1982,

4  interest on tax deficiencies was to be determined by reference to a floating rate and compounded

5  daily.").

6  **B.      Frivolous Filing Penalties**

7          26 U.S.C. § 6702 states that an individual may be subject to a penalty of $5,000 for tax

8  filings reflecting positions that the IRS has deemed to be frivolous.  *See* 26 U.S.C. § 6702(c)

9  ("The Secretary shall prescribe (and periodically revise) a list of positions which the Secretary

10  has identified as being frivolous for purposes of this subsection.")

11          Here, the government has presented on summary judgment the Forms 1040 and respective

12  attachments that defendant submitted to the IRS.  (*See* Doc. Nos. 35-5, 35-6, 35-7, 35-8, 35-9.)

13  Defendant's tax filings include various assertions and arguments that are clearly frivolous.

14  Plaintiff has chosen to highlight two particular frivolous assertions and arguments made by

15  defendant in moving for summary judgment.  (*See* Doc. No. 35-1 at 8–9.)  First, in each of her

16  Forms 1040, defendant reported no taxable income and zero tax liability, which are frivolous

17  positions.  *See* Notice 2008-14(1)(e) (categorizing the position that a "taxpayer has an option

18  under the law to file a document or set of documents in lieu of a return or elect to file a tax return

19  reporting zero taxable income and zero tax liability even if the taxpayer received taxable income

20  during the taxable period for which the return is filed" as frivolous).  Additionally, plaintiff notes

21  that defendant testified that she attached a disclosure statement with a disclaimer of liability to

22  each of her Forms 1040 at issue, in an attempt to reduce her federal tax liability.  (*See* Doc. No.

23  35-1 at 9.)  This is also a frivolous position pursuant to § 6702.  *See* Notice 2008-14(19).

24          For these reasons, each submission by defendant Ford of a Form 1040 from years 1993,

25  2001, 2002, 2003, and 2005 contains at least one frivolous position pursuant to § 6702(c), and in

26  granting summary judgment in favor of plaintiff, a $5,000 penalty for each Form 1040 will be

27  assessed to defendant.

28  /////

**CONCLUSION**

Accordingly,

1.      Plaintiff's motion for summary judgment (Doc. No. 35) is granted in its entirety;

2.      Judgment is entered against defendant for $190,854.91, which represents her 2003 federal income tax liability including interest and penalties assessed pursuant to 26 U.S.C. § 6702 for the years of 1993, 2001, 2002, 2003, and 2005;

3.      Defendant's pending motions (Doc. Nos. 54, 55, 57) are denied as moot;

4.      All currently scheduled dates for further proceedings in this action are vacated; and;

5.      The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  __**September 28, 2018**__          _____
                                                                UNITED STATES DISTRICT JUDGE